UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAFAEL P.,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, *et al.*,

Respondents.

Case No.  1:25-cv-1738-DAD-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Rafael P. was admitted into the United States in 2001, and, after serving a prison sentence for a controlled substances crime, he was arrested and re-detained by ICE.[1]  An immigration judge held a custody redetermination hearing and denied petitioner's release. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention without another hearing violates the Fifth Amendment.  For the reasons outlined below, I recommend that the petition be denied.

**Background**

On October 16, 2001, petitioner was admitted into the United States as a Lawful Permanent Resident, after coming from Mexico.  ECF No. 12-1 at 2.  On September 25, 2024, petitioner was convicted of cultivating marijuana in violation of California Health and Safety

---

[1] Petitioner asks the court to omit his last name.  ECF No. 1 at 2 n.1.  As such, I use his first name and last initial only, which accords with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

Code § 11358(c) and sentenced to two years.  ECF No. 12-2 at 7.  On October 15, 2025, petitioner was re-detained by ICE.[2]  ECF No. 1 at 11.  On November 6, 2025, at petitioner's request, an immigration judge held a custody redetermination hearing and, based on the finding that petitioner is "a danger to the community," denied bond; petitioner waived his right to appeal.  ECF No. 12-3 at 2-3.

## Procedural History

On December 4, 2025, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus, ECF No. 1, and a motion to appoint counsel, ECF No. 3.  The court granted petitioner's request on December 8, 2025, ECF No. 5, and counsel appeared on January 5, 2026.  ECF No. 8.  On February 10, 2026, respondents filed an answer.  ECF No. 12.  Despite indicating that petitioner would file a response, petitioner's counsel has neither filed a reply nor sought additional time to do so.[3]  *See* ECF No. 11 at 1.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[2] The record does not establish when petitioner was released from prison or whether he was immediately transferred to ICE custody.

[3] In a joint status report, the parties indicated that respondents' answer would be filed by February 6, and petitioner's response by February 13.  ECF No. 11 at 1.  While respondents did not file an answer until February 10, it has been more than seven days since that filing, which is the amount of time that the parties agreed petitioner would have to file a response.

2

**Analysis**

Petitioner argues that respondents violated his Fifth Amendment Due Process rights by re-detaining him without a second bond hearing.  ECF No. 1 at 16-17.  Respondents counter that the petition should be dismissed because petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), which allows the Attorney General to detain and then remove any noncitizen who has committed a qualifying crime.  ECF No. 12 at 2.  There is no dispute that petitioner is subject to mandatory detention under § 1226(c) because of his conviction under California Health and Safety Code § 11358(c).  *See Saengvilay v. Garland*, No. 20-73259, 2022 WL 17583053, at *1 (9th Cir. Dec. 12, 2022) (finding that a violation of California Health and Safety Code § 11358(c) is "an offense covered by 8 U.S.C. § 1227(a)(2)(B)(i)"); 8 U.S.C. § 1226(c)(1)(B) (mandating the detention of a noncitizen who "is deportable by reason of having committed any offense covered in" 8 U.S.C. § 1227(a)(2)(B)).  However, while § 1226(c) mandates petitioner's detention, respondents fail to address petitioner's argument that his detention, absent another bond hearing, violates the Fifth Amendment.  *See* ECF No. 1 at 6-17; ECF No. 12 at 2-3.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  *Morrissey*, 408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many

3

restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions not unlike those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See O.A.C.S. v. Wofford*, No. 1:25-cv-01652-DAD-CSK, 2025 WL 3485221, at *4 (E.D. Cal. Dec. 4, 2025); *Labrador-Prato v. Noem*, 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025); *Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603 CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in October 2001. ECF No. 12-1 at 2. Prior to his arrest and conviction in 2024, he lived in the United States, subject to ICE supervision but outside of custody, for over twenty years. During that time, petitioner formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. Accordingly, I find that petitioner's initial release and time out of custody created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting

cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Starting with the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  For over twenty years, petitioner was released in the United States under the supervision of ICE, during which time he had three children who are U.S. citizens.  ECF No. 1 at 6.  Accordingly, I find that petitioner has a significant private interest in his continued release.  *See Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second factor, petitioner has had the benefit of procedural safeguards to protect his liberty interest.  In November 2025, petitioner appeared at a bond hearing before an immigration judge, who ordered petitioner's continued detention based on the finding that he is "a danger to the community."  ECF No. 12-3 at 2.  "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community."  *Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL

3254999, at *7 (E.D. Cal. Nov. 22, 2025) (quoting *Zadvydas*, 533 U.S. at 690).  There is no argument or evidence to suggest that the bond hearing was conducted unfairly, and although petitioner had the right to appeal this decision, he voluntarily waived such right.  *See id.* at 3; 8 C.F.R. § 236.1(d)(3).  As such, there is nothing in the record to indicate a "probable value" of holding a second bond hearing.  *See Mathews*, 424 U.S. at 335.

The bond hearing and ability to appeal "ensured that the risk of erroneous deprivation would be 'relatively small.'"  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1210 (9th Cir. 2022) (finding that the petitioner's detention was "subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker").  Accordingly, I find that there is a low risk that petitioner's liberty interest was erroneously deprived.  *See Espinoza v. Wofford*, No. 1:24-cv-01118-SAB, 2025 WL 1556590, at *13 (E.D. Cal. June 2, 2025) (finding that the risk of erroneous deprivation is "minimal" where the petitioner detained under § 1226(c) had a bond hearing before an immigration judge).

Lastly, regarding the third factor, the government "has an obvious interest in protecting the public from dangerous criminal aliens.  Through detention, the government likewise seeks to increase the chance that, if ordered removed, the aliens will be successfully removed."  *Rodriguez Diaz*, 53 F.4th at 1208 (cleaned up).  Indeed, when Congress provided for mandatory detention under § 1226(c), it relied on evidence that "one out of four criminal aliens released on bond absconded prior to the completion of his removal proceedings" and that "after criminal aliens were identified as deportable, 77% were arrested at least once more and 45%—nearly half—were arrested multiple times before their deportation proceedings even began."  *Demore v. Kim*, 538 U.S. 510, 518, 520 (2003).  Accordingly, I find that the government has a strong interest in detaining petitioner under § 1226(c) without holding a second bond hearing.

A consideration of the *Mathews* factors demonstrates that petitioner is not entitled to habeas relief.

**Conclusion**

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be denied.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be DENIED.

2. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    February 26, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE